# **EXHIBIT 2**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA BEDI, et al., ) | |
| ) | Case no.: 1:25-cv-03837 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMITTEE ON EDUCATION AND ) | |
| WORFORCE, U.S. HOUSE OF ) | |
| REPRESENTATIVES, et al. ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF LYNN COHN

I, Lynn Cohn, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a full Clinical Professor at the Center on Negotiation, Mediation and Restorative Justice ("Center"), situated in the Bluhm Legal Clinic ("Bluhm Clinic") at Northwestern Pritzker School of Law ("Northwestern Law"). "The Bluhm Legal Clinic is internationally recognized for its involvement in legal reform, and for advancing the goal of providing a skilled, ethical, and public-spirited legal profession integral to a society that values and promotes justice."[1] The Center is one of 20 clinics and 12 centers housed at the Bluhm Clinic, including the Community Justice and Civil Rights Clinic ("CJCR Clinic") targeted in the U.S. House of Representatives Committee on Education and Workforce ("Committee") letter to Northwestern dated March 27, 2025 ("Letter").

2. I began my work at Northwestern Law in 1991 as an adjunct professor and became a full-time faculty member in 1996, when I founded and became the director of the Center. The Center was incorporated into the Bluhm Clinic in 2008. The Center includes 14 different course

---

[1] https://www.law.northwestern.edu/legalclinic/about/index.html (accessed on April 7, 2025)

offerings, which I teach along with other professors. I served for 30 years as director for the Center until earlier this year when my colleagues Annalise Buth and Alyson Carrel became co-directors of the Center. My work with the Center entails teaching, serving as a professional mediator, training students to become mediators, and working on various restorative justice and alternative resolution initiatives in the community. I have practiced as a mediator since 1998, and in 2013, I began serving as a Special Master, designated by various federal district courts, to implement complex class action civil rights settlements.

3. The Center provides students with theoretical and practical experience in negotiation and mediation through a series of courses and workshops. We educate, train and supervise students to participate in settlement negotiations, serve as mediators in formal mediations, and facilitate restorative justice circles in a variety of settings.

4. The Center offers the most extensive course offerings in the Bluhm Clinic – it includes 14 different course offerings, with the negotiation course having 8-12 sections of its own. Two qualified students serve as teaching assistants for each of the negotiation course sections – a uniquely broad opportunity for students to gain this experience. Hundreds of students are enrolled in the Center's courses in a given academic year. For the 2024-2025 academic year, about 300 students enrolled in classes with the Center, and we conducted about 60 mediations and 23 restorative justice circles. The Center has been repeatedly designated as a Top 10 Dispute Resolution Program by *U.S. News & World Report*, most recently in the 2024 edition.[2]

5. The Center works with a variety of parties, including individuals, organizations, businesses, government agencies, and the Illinois state court judiciary, to resolve disputes through alternatives to litigation, focusing on non-adversarial and extra-judicial solutions. The

---

[2] https://www.usnews.com/best-graduate-schools/top-law-schools/dispute-resolution-rankings (accessed on April 7, 2025)

2

Center's faculty and students work with different groups in the community as part of this work. Many of the mediations concern community issues – employment, housing, contracts, small claims, and neighborhood disputes. Restorative justice circles provide a confidential space to address conflicts, build relationships and repair harm. We provide and participate in these circles on-site at Northwestern Law and off-site with community partners. The participants for both the mediations and circles come from a variety of backgrounds and perspectives. The Center's ability to represent, partner and mediate with such a diverse range of parties is due to the Center's reputation as a trusted and integrous legal resource.

6. The Letter refers to "institutionalization of left-wing political activism" and the use of "Northwestern's name and resources to engage in progressive-left political advocacy." The Letter includes all clinics and centers in the Bluhm Clinic in this characterization of ideologies presumably contrary to the current Administration's agenda when it states that the CJCR Clinic "is only one of numerous Northwestern Law clinics and centers promoting left-wing causes." "Northwestern's decision to fund left-wing advocacy with its institutional resources" is ostensibly the basis for the Committee to request the broad scope of sensitive information listed immediately following these contentions in the Letter.

7. Much of the work we do, the communities we serve, and the approaches we utilize at the Center are similar to the people, politics and beliefs that the Trump administration and the congressional committees aligned with it have recently targeted and attacked. I understand the Letter to be referring to and potentially targeting the Center at the Bluhm Clinic and our work, partnerships, clients, and methods.

8. In our classes we explore privilege, i.e. "who gets to sit at the table," power imbalances, and implicit bias in the context of mediations and negotiations. We examine historic exclusion in

3

the legal system and promote diversity, equity and inclusion in alternative resolution methods. The Center honors identity as part of our processes and emphasizes the value of different perspectives typically excluded from traditional legal forums and systems. The Center's clinical faculty frequently host and speak at conferences and workshops that incorporate these principles, such as exploring racial and economic justice in the dispute resolution process, and alternatives to the criminal justice system and incarceration.

9. After characterizing the CJCR and Bluhm Clinic's perceived political viewpoints in its Letter, the Committee requests: (1) "[a]ll written policies, procedures, and guidance relating to the function of legal clinics at Northwestern Law, including any written guidance on what constitutes appropriate work and direction on appropriate client representations;" (2) "[a] detailed budget for the Bluhm Legal Clinic, including detailed budgets for its more than 20 clinics and 12 centers;" and (3) "[a] list of the sources of Bluhm Legal Clinic's funding, including the funding for each of its centers and clinics." These requests clearly include the Center, as one of the 20 clinics and 12 centers housed at the Bluhm Clinic. The request implicates the disclosure of the Center's partners, clients, participants, donors, featured speakers, events, and discretionary decisions involved in the Center's courses and clinical experiences.

10. The Center works with individual and organizational partners whose information is private and confidential – the disclosure of which would violate our agreements with these partners and cause substantial harm. The Center maintains confidentiality of all aspects of mediations and circles the Center participates in – this non-disclosure is crucial to the participants (parties, attorneys, the judiciary and court personnel, and mediators) and to the integrity of the mediation process. The Center is affiliated with courts in Cook County, Lake County, and Will County and any concerns of a breach of the confidentiality concerning the

4

mediation process would impact that affiliation and the Center's ability to continue its instructional and clinical work. I have no doubt that the federal government's probe of this information would deter and potentially terminate the partnerships crucial to the mediation and restorative justice programs. It is highly likely that partners would no longer participate in our dispute resolution programs if there is any risk that participants' identities would be subject to disclosure and investigation.

11. Additionally, various individual and organizational communities we collaborate with could be harmed by the Committee's scrutiny of the Center's work. We work with international students, scholars and entities who would be vulnerable to attack. Through the Northwestern Prison Education Program ("NPEP"), I and others in the Center teach classes and facilitate restorative justice circles at facilities in the Illinois Department of Corrections. The trust and relationships we have built with various Chicago community members, who participate in our restorative justice process and present in the Center's seminars, would be irreparably harmed. The Center's ability to share a diverse range of perspectives and center the voices of the people in our classes and workshops would be chilled by the threat of the Committee's scrutiny.

12. Bluhm Clinic gets donations from alumni and other funders who, should Northwestern Law be compelled to comply with the Committee's request, I am certain will be disillusioned and disappointed in the Bluhm Clinic, well-regarded for its independence from governmental and corporate influence, and consequently reticent to continue their financial support. Bluhm clinical professors are currently hearing from alumni concerned about providing future funding in light of the Committee's request for information.

13. Northwestern Law and the Bluhm Clinic's reputation as a place that supports academic and viewpoint freedom is crucial to the Center's current and prospective students. On April 4,

2025, in a panel at Northwestern Law for admitted students, a prospective student asked a clinician about the issue of our future academic freedom. We are already seeing the impact that the Letter, and the federal government's interference and attack on students on other campuses, is having on our ability to attract prospective students.

14. As the former director and current clinical professor at the Center, I understand intimately the Bluhm Clinic's importance in current and prospective students' legal education and future career. The value of the clinical experience to skill development, career readiness and specialized knowledge is greatly diminished if faculty and students cannot speak freely about the political and social justice issues that are inherently involved.

15. The Center, like other law school clinics, creates access to legal services and serves the public interest of legal protection and representation for those that would otherwise go without. The Center provides countless pro bono hours and dispute resolution services in accordance with our own principles and with all lawyers' professional responsibility to do so. The American Bar Association Model Rule 6.1 establishes that "[e]very lawyer has a professional responsibility to provide legal services to those unable to pay" by providing direct services to persons of limited means, and by providing additional services through "delivery of legal services at no fee or substantially reduced fee to individuals, groups or organizations seeking to secure or protect civil rights, civil liberties or public rights…" I am concerned that providing any of the information requested by the Committee would open the door to the Committee dictating the Center's choice of pro bono services and the clients or partnerships receiving those services.

16. The Center's mediation work resolves numerous conflicts, directly and immediately preventing harm and restoring relationships in people's homes, workplaces and communities. We equip people with the tools and training to imagine and create alternative methods to resolve

6

disputes rather than relying on adversarial litigation, criminal prosecution and carceral punishment. This approach is proven to be immensely beneficial to people, yet is contrary to the law and order and punitive approach espoused by the current administration.

17. My colleagues in the Bluhm Clinic who do policy work through coalitions with legislators and stake-holders have informed me that the Bluhm Clinic would not be viewed as a safe partner if the Committee's investigation compels Northwestern Law to provide information about the projects they are advising on. The forced disclosure of information about the Bluhm Clinic's policy work would likely result in the termination of their participation in these projects. The Center's policy work serves the public interest by informing legislative and judicial initiatives focused on reforming systems that deeply affect our communities, such as the juvenile justice system.

18. I am deeply concerned about the irreparable harm caused by the tender of information requested in the Committee's Letter. As described above the Bluhm Clinic and the Center's reputation will be immediately devalued, the content of our instruction and our teaching methods will be chilled, the clinical opportunities will diminish, the mediation and restorative justice services we provide will be curtailed, our trusted relationships with partners, clients and the judiciary will be compromised, and Northwestern Law's ability to attract robust clinical faculty and prospective students will be undermined.

I declare under penalty of perjury, on this 8th day of April, 2025, that the foregoing is true and correct, to the best of my knowledge, information and belief.

s/Lynn Cohn