# **EXHIBIT 3**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA BEDI, et al., ) | |
| ) | Case no.: 1:25-cv-03837 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMITTEE ON EDUCATION AND ) | |
| WORFORCE, U.S. HOUSE OF ) | |
| REPRESENTATIVES, et al. ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF ANNALISE BUTH**

I, Annalise Buth, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I submit this declaration in support of the Plaintiffs' Complaint and Motion for Temporary Re-straining Order in the above-captioned case. I am of the age of majority, and I am competent to make this declaration.

2. I am a Clinical Associate Professor of Law and the Co-Director of the Center on Negotiation, Mediation, and Restorative Justice ("CNMRJ"), situated in the Bluhm Legal Clinic ("Bluhm Clinic") at Northwestern Pritzker School of Law ("Northwestern Law"). The CNMRJ is one of 20 clinics and 12 centers housed at the Bluhm Clinic, including the Community Justice and Civil Rights Clinic ("Community Justice Clinic") targeted in the U.S. House of Representatives Committee on Education and Workforce ("Committee") letter to Northwestern dated March 27, 2025 ("Letter").

3. I received my J.D. from Northwestern University in 2007 and am admitted to the bar in Illinois.

4. I began my employment at the CNMRJ as the M.R. Bauer Foundation Fellow in

1

Dispute Resolution in 2015. In academic year 2020–2021, I became a Clinical Assistant Professor of Law and became a Clinical Associate Professor and the Co-Director of the CNMRJ in academic year 2024-2025. Prior to joining the CNMRJ, I worked as a legal aid attorney, as a staff attorney at the Michigan Court of Appeals, and as a litigation associate at a Michigan law firm.

5. The CNMRJ provides students with theoretical and practical experience in negotiation, mediation, and restorative justice through a series of courses and workshops. We educate, train, and supervise students to participate in settlement negotiations, serve as mediators in formal mediations, and facilitate restorative justice circles in a variety of settings.

6. The CNMRJ offers multiple different course offerings. Hundreds of students are enrolled in the CNMRJ's courses in a given academic year. For the 2024–2025 academic year, about 300 students enrolled in classes with the CNMRJ and we conducted about 60 mediations and 23 restorative justice circles.

7. The CNMRJ works with a variety of parties, including individuals, organizations, businesses, government agencies, and the Illinois state court judiciary to resolve disputes through alternatives to litigation, focusing on non-adversarial and extra-judicial solutions. The CNMRJ's faculty and students work with different groups in the community as part of this work. Many of the mediations concern community issues – employment, housing, contracts, small claims, and neighborhood disputes. Restorative justice circles provide a confidential space to address conflicts, build relationships, and repair harm. We provide and participate in these circles on-site at Northwestern Law and off-site with community partners. The participants for both the mediations and circles come from a variety of backgrounds and perspectives. The CNMRJ's ability to represent, partner, and mediate with such a diverse range of parties is due to the

CNMRJ's reputation as a trusted and integrous legal resource.

8. In addition to my duties as Co-Director of the CNMRJ, I teach classes on negotiations and restorative justice. I also facilitate restorative practices and mediate cases.

9. My restorative justice courses include collaborations with numerous community organizations and community members, many of whom are from marginalized communities. It is pedagogically important for students learning about restorative practices to learn from members of those communities and practitioners who are utilizing restorative justice practices outside the narrow context of the law school and who have different conceptualizations of restorative justice based on their lived experiences.

10. In addition, through the Northwestern Prison Education Program, I teach classes and facilitate restorative justice practices at facilities in the Illinois Department of Corrections.

11. The Committee's Letter threatens the CNMRJ's ability to do its important work. I understand the Letter as requesting sensitive materials not just from Professor Bedi's Community Justice Clinic but from all clinics within the Bluhm Legal Clinic, which includes the CNMRJ.

12. The Committee's inquiry and implicit threat to withhold billions of dollars in federal funding from Northwestern will have a chilling effect on the CNMRJ's faculty's academic freedom to teach classes on subjects that the Trump administration finds objectionable.

13. The Committee targets Professor Bedi's clinic for working on cases involving "over-policing and mass imprisonment" and the Bluhm Clinic writ large for engaging in what the Committee views as "left-wing advocacy." Many of my classes touch on subjects like mass incarceration or other topics that the Trump administration may consider "left-wing." For example, my classes often include conversations about systemic racism in the criminal legal system. Given the Trump administration's opposition to education on systemic racism, my

ability to teach and facilitate meaningful dialogue on those subjects would be impaired by the knowledge that the way I teach my classes is subject to congressional scrutiny.

14. In addition, we work with individual and organizational partners whose information must not be provided to the Committee. We maintain confidentiality of all aspects of any mediations and circles we participate in – this non-disclosure is crucial to the participants (parties, attorneys, the judiciary and court personnel, and mediators) and to the success of the mediation or circle process. I mediate cases through a partnership with the Center for Conflict Resolution, including family matters, cases involving juveniles, misdemeanors, parenting issues, attorney's fees disputes, and stalking/no contact cases. A breach of the confidentiality concerning the mediation process would impact that affiliation and the CNMRJ's ability to continue its instructional and clinical work. I have no doubt that the federal government's probe of this information would deter and potentially terminate the partnerships crucial to the CNMRJ's programs.

15. Additionally, various individual and organizational communities we collaborate with could be harmed by the Committee's scrutiny of the CNMRJ's work. For example, we work with individuals who are impacted by the criminal legal system, including both currently and formerly incarcerated people, as well as people with varying immigration statuses who may be deterred from collaborating with the CNMRJ if they are aware that it is the subject of congressional scrutiny. The CNMRJ's ability to share a diverse range of perspectives in our classes and workshops would be chilled by compliance with the Committee's Letter.

16. I am deeply concerned about the irreparable harm that will be caused by the tender of information requested in the Committee's Letter. The CNMRJ's ability to maintain meaningful partnerships will be damaged, faculty members' academic freedom will be chilled, the

educational opportunities for students will diminish, and Northwestern Law's ability to attract talented faculty and prospective students will be undermined if Northwestern is forced to comply with the Committee's demands.

I declare under penalty of perjury, on this 8th day of April, 2025, that the foregoing is true and correct, to the best of my knowledge, information, and belief.

/s/ Annalise Buth
Annalise Buth