# EXHIBIT 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA BEDI, et al., ) | |
| ) | Case no.: 1:25-cv-03837 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMITTEE ON EDUCATION AND ) | |
| WORFORCE, U.S. HOUSE OF ) | |
| REPRESENTATIVES, et al. ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF CYNTHIA WILSON

I, Cynthia Wilson, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I submit this declaration in support of the Plaintiffs' Complaint and Motion for Temporary Restraining Order in the above-captioned case. I am of the age of majority, and I am competent to make this declaration.

2. I am a Clinical Professor of Law and the Director of the Center for Externships ("the Center") situated in the Bluhm Legal Clinic ("Bluhm Clinic") at Northwestern Pritzker School of Law ("Northwestern Law"). The Center is one of 20 clinics and 12 centers housed at the Bluhm Clinic, including the Community Justice and Civil Rights Clinic ("Community Justice Clinic") targeted in the U.S. House of Representatives Committee on Education and Workforce ("Committee") letter to Northwestern dated March 27, 2025 ("Letter").

3. I received my J.D. from Northwestern University in 1986 and am a member of the bar in Illinois.

4. I began teaching at the law school in 2000 and became the Director of the Center for Externships in 2010.

5. Prior to joining the faculty at Northwestern, I was a civil rights attorney at the Chicago Lawyers' Committee for Civil Rights Under Law for 10 years.

6. The Center for Externships offers a range of Practicum courses that provide students an opportunity to gain real-world experience under the supervision of experienced lawyers. Each course combines work in one practice setting or area of law combined with a seminar focused on issues arising in that kind of work. Practice areas include public interest law, criminal law, civil government, corporate law, media law, high tech law, and sports and entertainment. Students are placed in a variety of practice contexts including civil rights and legal aid agencies; federal, state, and local government agencies; federal and state judicial chambers; and major corporations.

7. Students have the freedom to choose a placement site based on their particular interests and career goals. Popular placements include the ACLU, Legal Aid Chicago, the SEC, the EPA, the Office of the Illinois Attorney General, the Federal Defender, the U.S. Attorney's Office, federal and state court judicial chambers, and many more.

8. The Center provides a unique benefit to students by providing them opportunities to gain real-life practice experience in a wide variety of legal workplaces. Externships enable students to build concrete legal skills, explore different practice areas, and build connections with practicing attorneys that may lead to post-graduate job opportunities. Students further benefit from engaging in discussions with their classmates during the seminar portion of the course, thus vicariously learning about a range of other organizations and workplaces that they may not have a chance to personally explore.

9. In the past year, the Center offered nine separate courses, for a total of 16 classes over the fall, spring, and summer sessions. One hundred eighty-nine students enrolled in those courses, which were taught by 15 faculty members.

10. Along with my duties as Director of the Center, I also teach the Judicial Practicum and the Public Interest Practicum. My students in those courses complete externships at federal and state judicial chambers and various public interest legal organizations.

11. The Committee's Letter threatens the Center on Externship's ability to do its important work. I understand the Letter as requesting sensitive materials not just from Professor Bedi's Community Justice Clinic but from all clinics within the Bluhm Legal Clinic, which includes the Center.

12. The Committee targets Professor Bedi's clinic and the Bluhm Clinic writ large for engaging in what the Committee views as "left-wing advocacy." Given the broad range of externship placement options that are available to the Center's students, partner organizations necessarily include organizations that engage in work that the Trump administration would consider "left-wing advocacy" and therefore objectionable. For example, the Committee attacks Professor Bedi's clinic for working on cases involving "over-policing and mass imprisonment." Many of the Center's students have completed externships at organizations that engage in litigation and policy work on those issues, such as the ACLU.

13. If Northwestern is forced to disclose confidential information related to the operation of its legal clinics, that disclosure may dissuade partner organizations from being willing to accept the Center's students for externship placements. Many legal organizations engage in litigation and advocacy work that depends on being able to maintain strict confidentiality of their records. Those organizations may not be willing to take the risk of jeopardizing their work by partnering with a legal clinic that is subject to a congressional investigation and providing documents to the Committee.

14. Similarly, the Letter may also chill students' ability to participate in the externship

placements of their choosing. The Letter expresses disapproval of students receiving "academic credit with the support of federal student aid" for engaging in "political advocacy" through Professor Bedi's clinic. Students could reasonably fear that their access to federal loans could be threatened if they participate in an externship at an organization that engages in legal work that the Trump administration opposes, and self-select out of educational opportunities that they may otherwise have taken advantage of.

15. The Letter's request for "any written guidance on what constitutes appropriate work" is a clear indication that the Committee seeks to interfere in the Bluhm Clinic's work on subjects that the Trump administration does not approve of. That interference from the federal government is a direct threat to the academic freedom of the Center's professors.

16. The Committee's inquiry and implicit threat to withhold billions of dollars in federal funding from Northwestern will have a chilling effect on the Center's faculty's freedom to teach classes or host guest speakers on subjects that are politically adverse to the Trump administration's agenda.

17. In my Practicum courses, I facilitate classes on challenging and potentially controversial subjects where law students might disagree. For instance, students in my Judicial Practicum are encouraged to observe criminal sentencings. Those observations often lead to conversations about the United States's disproportionate rates of incarceration of people of color as compared with white people. Given the Trump administration's opposition to education on systemic racism, my ability to teach and facilitate meaningful dialogue on those subjects would be impaired by the knowledge that the way I teach my classes is subject to congressional scrutiny.

18. I am deeply concerned about the irreparable harm that will be caused by the tender of

information requested in the Committee's Letter. The Center for Externships' work will be chilled, the externship opportunities for students may diminish, and Northwestern Law's ability to attract talented faculty and prospective students will be undermined if Northwestern is forced to comply with the Committee's demands.

I declare under penalty of perjury, on this 7th day of April, 2025, that the foregoing is true and correct, to the best of my knowledge, information, and belief.

/s/ Cynthia Wilson  
Cynthia Wilson