# EXHIBIT 15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA BEDI and LYNN COHN, | ) ) ) |
| Plaintiffs, | ) Case no.: 1:25-cv-03837 ) ) |
| v. | ) ) |
| THE UNITED STATES HOUSE OF REPRESENTATIVES COMMITTEE ON EDUCATION AND WORFORCE, et al., | ) ) ) ) |
| Defendants. | ) ) |

**DECLARATION OF ANDREA LEWIS HARTUNG**

I, Andrea Lewis Hartung, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I submit this declaration in support of the Plaintiffs' Complaint and Motion for Temporary Restraining Order in the above-captioned case. I am of the age of majority, and I am competent to make this declaration.

2. I am a Clinical Professor of Law and the Director of the Center on Wrongful Convictions ("CWC"), situated in the Bluhm Legal Clinic ("Bluhm Clinic") at Northwestern Pritzker School of Law ("Northwestern Law"). The CWC is one of 20 clinics and 12 centers housed at the Bluhm Clinic, including the Community Justice and Civil Rights Clinic ("Community Justice Clinic") targeted in the U.S. House of Representatives Committee on Education and Workforce ("Committee") letter to Northwestern dated March 27, 2025 ("Letter").

3. I received my J.D. from Northwestern University in 2011 and am admitted to the bar in Illinois.

4. I first joined the CWC in 2013 as a clinical fellow. I have since held the positions of

1

Clinical Assistant Professor of Law, Clinical Associate Professor of Law, and Clinical Professor of Law. In those roles, I built and developed the CWC's Women's Defense Initiative, which seeks post-conviction sentencing relief for women who are serving extreme sentences notwithstanding gender-focused mitigating factors that contributed to their cases. After leaving the CWC for a grant-funded position from June 2022 through June 2024, I returned to the CWC as Legal Director in July 2024. I became the Director of the CWC in November 2024.

5. Prior to returning to the CWC, I was an appellate attorney in the Supreme Court and Appellate Program of the Roderick & Solange MacArthur Justice Center. I also have worked as an associate in the labor and employment group at Vedder Price, a Chicago-based law firm.

6. The CWC is dedicated to identifying and rectifying wrongful convictions and other serious miscarriages of justice. It primarily represents people with claims of innocence who are seeking to be exonerated. Outside of the exoneration context, the Center takes on other cases seeking to assist people who have been disproportionately impacted by the criminal legal system, such as seeking sentence reductions for people who were convicted of murder at a young age and women with convictions related to post-partum illness.

7. Since its founding in 1999, the CWC has exonerated over 50 men, women, and children from states around the country. It has also worked to free many clients who are not exonerated, but whose convictions or sentences were unjust.

8. As Director of the CWC, my responsibilities include overseeing the operations of the CWC, fundraising, and teaching clinical courses.

9. The CWC has educated hundreds of law students since its inception. Approximately 12–16 students enroll in the CWC clinic in an average semester.

10. Clinical legal education allows students to gain hands-on experience under the

supervision of practicing attorneys, which provides invaluable opportunities for building practical legal skills and exploring different practice areas.

11. CWC students gain hands-on experience assisting in the legal representation of indigent individuals who would struggle to obtain legal representation without the CWC's willingness and ability to provide pro bono legal services. The CWC thus provides both a valuable service to wrongfully convicted individuals who would otherwise be unable to access legal services, as well as a learning opportunity for future lawyers about the value of pro bono legal work.

12. The Committee's Letter threatens the CWC's ability to do its important work. I understand the Letter as requesting sensitive materials not just from Professor Bedi's Community Justice Clinic but from all clinics within the Bluhm Legal Clinic, which includes the CWC.

13. The Committee targets Professor Bedi's clinic for working on cases involving "over-policing and mass imprisonment" and the Bluhm Clinic writ large for engaging in what the Committee views as "left-wing advocacy." The CWC's work—which focuses on issues connected to mass incarceration and often involves claims related to police or other official misconduct—would likely be viewed as "left-wing" by the Trump administration and is therefore a direct target of the Committee's inquiry.

14. Likewise, the Committee targets Professor Bedi's clinic for representing clients whose political views are unpopular with the Trump administration, including Palestine solidarity activists. Some of the CWC's clients are politically unpopular because of their conviction—including for serious crimes such as murder and sexual assault—and thus are potential targets of the current administration's ire given its tough-on-crime ideology.

15. I do not always share the same political or social views as my clients, and indeed sometimes we vigorously disagree. Those disagreements in no way diminish my clients' right to

legal representation, and do not affect my willingness to continue with a case. The federal government's political opposition to some of my clients' views or actions has no relevance to their right to representation.

16. The Letter's request for "any written guidance on what constitutes appropriate work and direction on appropriate client representations" is a clear indication that the Committee seeks to interfere in the Bluhm Clinic's representation of clients who the Trump administration does not approve of. That interference from the federal government is a direct threat to my academic freedom, to my right to represent the clients of my choosing, and to those clients' ability to access pro bono legal representation. My ability to choose cases independent of interference from the law school and the government is essential to my ability to be an effective lawyer and clinician.

17. The Committee's inquiry and implicit threat to withhold billions of dollars in federal funding from Northwestern will also have a chilling effect on my ability to teach on subjects that are politically adverse to the Trump administration's agenda. Given the Trump administration's opposition to education on "DEI"-related issues, my ability to teach and facilitate meaningful dialogue on those subjects would be impaired by the knowledge that the way I teach my classes is subject to congressional scrutiny.

18. The inquiry also threatens vital partnerships without which the CWC could not function. The CWC's model depends in large part on the assistance of pro bono lawyers from major law firms, who at any given time are co-counsel on upwards of 50% of the CWC's cases. For instance, I am currently the CWC's only full-time faculty member. Without the assistance of outside pro bono counsel, I would be forced to drastically reduce my case load. Moreover, I am not a trial attorney, and therefore when CWC clients are granted a new trial, those clients are

dependent on pro bono counsel from outside the CWC to handle that stage of their case. The prospect of an ongoing congressional inquiry into the Bluhm Clinic's work and forced disclosure of sensitive documents to the federal government may dissuade these essential law firm partners from collaborating with the CWC in the future, severely damaging the CWC's ability to do its work.

19. The Letter also seeks materials related to all of the Bluhm Clinic's funding sources, which includes the CWC. Among other sources, the CWC depends for its funding on a consistent pool of steady donors. If Northwestern Law is compelled to comply with the Committee's request to release private donor information, donors may cease supporting the CWC in the future. The CWC's funding is particularly endangered given that some of its cases and clients are not straightforward innocence cases and are potentially controversial. Donors may be deterred if their support could be disclosed as part of a congressional investigation.

20. I am also concerned about the example we will be setting for our students if Northwestern Law is forced to comply with the Committee's inquiry. I teach my students to know their rights and to vigorously defend both their and their clients' rights. I am concerned that those teachings will be undermined if Northwestern Law complies with the Letter.

21. I am deeply concerned about the irreparable harm that will be caused by the tender of information requested in the Committee's Letter. The CWC's work will be chilled, its partnerships will be threatened, the clinical opportunities for students may diminish, and Northwestern Law's ability to attract talented clinical faculty and prospective students will be undermined if Northwestern Law is forced to comply with the Committee's demands.

I declare under penalty of perjury, on this 9th day of April, 2025, that the foregoing is true and correct, to the best of my knowledge, information, and belief.

/s/ Andrea Lewis Hartung
Andrea Lewis Hartung