# EXHIBIT 16

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA BEDI, et al., | ) | |
| | ) | Case no.:1:25-cv-03837 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMITTEE ON EDUCATION AND WORFORCE, U.S. HOUSE OF REPRESENTATIVES, et al. | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ERIC SIROTA

I, Eric Sirota, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I submit this declaration in support of the Plaintiffs' Complaint and Motion for Temporary Restraining Order in the above-captioned case. I am of the age of majority, and I am competent to make this declaration.

2. I am a Clinical Associate Professor and Director of the Tenant Advocacy Clinic ("TAC"), which is situated in the Bluhm Legal Clinic ("Bluhm Clinic") at Northwestern Pritzker School of Law ("Northwestern Law"). The TAC is one of 20 clinics and 12 centers housed at the Bluhm Clinic, including the Community Justice and Civil Rights Clinic ("Community Justice Clinic") targeted in the U.S. House of Representatives Committee on Education and Workforce ("Committee") letter to Northwestern dated March 27, 2025 ("Letter").

3. I received my J.D. from the University of Illinois College of Law in 2009 and am admitted to the bar in Illinois.

4. I have been the Director of the Tenant Advocacy Clinic since 2024.

5. I have spent my career advocating for low-income tenants and homeowners. I have

worked at not-for-profit organizations, law school clinics, and as an Assistant Attorney General at the Office of the Illinois Attorney's General's Consumer Fraud Bureau. I have continued this work since joining the TAC.

6. The TAC uses a variety of tools to advocate for low-income tenants on both an individual and systemic level. The TAC represents tenants in litigation facing evictions, housing discrimination, and poor living conditions. The TAC also represents and consults with grassroots organizations, such as tenant associations seeking to improve their building's living conditions.

7. Clinical education allows students to gain hands-on experience under the supervision of practicing attorneys, which provides invaluable opportunities for building practical legal skills and exploring different practice areas.

8. The TAC's collaborations with tenant associations and representation of individual tenants provide unique opportunities for students to learn about and practice a variety of lawyering skills and approaches to lawyering that they may not be exposed to in other clinics or in their non-clinical courses. TAC students engage in traditional representation of individuals, but also partner with organizations and even perform some transactional work on behalf of those organizations.

9. There is a scarcity of attorneys who represent tenant associations, and associations often struggle to find legal counsel. The TAC therefore helps fill this gap by providing legal services to groups who would otherwise struggle to access them, as well as providing an important learning opportunity for future lawyers about the value of such collaborations. By representing tenant associations and other organizations, the TAC seeks to combat housing problems at an aggregated level. Working with associations and organizations is thus also an efficient approach to housing advocacy, as it allows the TAC to address common issues faced by

many tenants at once.

10. There is also a scarcity of attorneys who represent low-income tenants who are not in eviction proceedings but who face bad living conditions. The TAC helps fill this gap as well.

11. The Committee's Letter threatens the TAC's ability to do its important work. I understand the Letter as requesting sensitive materials not just from Professor Bedi's Community Justice Clinic but from all clinics within the Bluhm Legal Clinic, which includes the TAC.

12. The Committee targets Professor Bedi's clinic for engaging in "political advocacy," teaching about "Movement Lawyering," and working with "collectives and community organizers," and targets the Bluhm Clinic writ large for engaging in what the Committee views as "left-wing advocacy." The TAC's work—which involves collaborations with community organizations, education and discussion on a movement-centered approach to lawyering, and advocacy which is likely in line with views the Committee and its allies consider "left wing"—is therefore a direct target of the Committee's inquiry.

13. The Letter's request for "any written guidance on what constitutes appropriate work and direction on appropriate client representations" is a clear indication that the Committee seeks to interfere in the Bluhm Clinic's representation of clients who the Committee and its allies do not approve of and advocacy for viewpoints the Committee and its allies do not approve of. That interference from the federal government is a direct threat to my academic freedom as well as the TAC's ability to represent the clients of its choosing and those clients' ability to access legal representation.

14. The Committee's inquiry and implicit threat to withhold billions of dollars in federal funding from Northwestern will have a chilling effect on clinicians' freedom to choose potentially controversial cases and to engage in policy work that may be adverse to the

Committee and its allies' agenda.

15. The Letter has already begun to influence my decisions about what cases I pursue. When the Letter was served, I was in the process of analyzing a potential case, a process that involves weighing whether the potential benefits of the prospective lawsuit will be worth the expenditure of resources and academic capital. The Letter alerted me that choosing to pursue the case could invite governmental retaliation against my clinic, my students, and my colleagues in the broader Bluhm Clinic and the University generally, a factor that weighs against advancing this lawsuit. I greatly resent the improper infringement of the Committee on such decisions, which should be insulated from interference by the political branches.

16. The Committee's inquiry will also have a chilling effect on my ability to teach on subjects that are politically adverse to the Committee and its allies' viewpoints and agenda. For example, my syllabus includes coursework on racial justice in housing, the history of racial discrimination in housing, and "community lawyering." Those lessons are pedagogically essential. Given the Committee and its allies' opposition to education on systemic racism and other "DEI"-related issues, I interpret the Letter as an implicit, if not explicit, threat to my ability to teach and facilitate meaningful dialogue on those subjects. Further, collaboration between academics and between academics and other subject-matter experts, both inside and outside of the legal discipline, is commonplace and infinitely valuable. I would be reticent to share or collaborate on these subjects with others for fear of increasing my exposure or subjecting them to federal scrutiny. I am similarly concerned others may be less willing to collaborate with me for fear of being subjected to federal scrutiny.

17. The Letter may also chill students' ability to enroll in the clinic of their choosing, including the TAC. The Letter expresses disapproval of students receiving "academic credit with

the support of federal student aid" for engaging in "political advocacy" through Professor Bedi's clinic. Students could reasonably fear that their access to federal loans could be threatened if they enroll in a clinic that engages in advocacy that the federal government opposes, and self-select out of educational opportunities that they may otherwise have taken advantage of.

18. As just one example, until recently, I planned to collaborate with a student from Switzerland who was planning to come to Northwestern Law as part of a visiting scholars program. That student withdrew from the program a few days after the Committee's Letter became public. I am convinced based on the timing that the Letter scared that student off from participating in the program, a loss both to that student and to myself and the TAC as a whole for missing out on a potentially fruitful collaboration. I have no doubt that many more students feel the same way, and that the Letter is causing significant stress to many students and may deter them from joining or working with the Bluhm Clinic in the future.

19. I am also concerned that the document requests could result in the disclosure of work product, such as TAC policies and templates, which provide insight into our strategic thinking as attorneys, reveal the inner workings on how we operate as a clinic, and contain substantive case-related information.

20. I am Jewish, and that identity informs the values that I bring to my work. I am profoundly offended and frightened that this attack on me and my colleagues is being perpetrated in the name of fighting antisemitism.

21. I am deeply concerned about the irreparable harm that will be caused by the tender of information requested in the Committee's Letter. The TAC's work will be chilled, the clinical opportunities for students will diminish, and Northwestern Law's ability to attract talented clinical faculty and prospective students will be undermined if Northwestern is forced to comply

with the Committee's demands.

I declare under penalty of perjury, on this 8th day of April, 2025, that the foregoing is true and correct, to the best of my knowledge, information, and belief.

                                                       /s/ Eric Sirota
                                                       Eric Sirota